01
02
03
04
05
06
07              UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
08                       AT SEATTLE

09  BLUE NILE, INC., a Delaware      )
    corporation,                     )  CASE NO. C10-380TSZ
                                     )
10               Plaintiff,          )
                                     )
11                                   )  ORDER
         v.                          )
12                                   )
    IDEAL DIAMOND SOLUTIONS, INC.    )
13  d/b/a IDS, Inc., Verified Independent )
    Diamond Purchaser's Affiliation, and VIDPA, )
14  a Delaware corporation, et al.,  )
                                     )
15               Defendants.         )
    _____
16

17     THIS MATTER comes before the Court on the Motion to Dismiss filed by defendant Mayfair

18  Diamonds & Fine Jewelry's ("Mayfair"), for lack of personal jurisdiction and improper venue pursuant to

19  Fed. R. Civ. P. 12(b)(2) and 12(b)(3), docket no. 26-1.[1]  Having reviewed the papers filed in support of,

20

21  _____

22  [1] In the alternative, Mayfair moves for a change of venue to the Southern District of New York pursuant to
    28 U.S.C. § 1404(a).  Mot., docket no. 26-1.

ORDER PAGE -1

and opposition to, the defendant's motion, as well as the supplemental briefing provided by the parties, the Court GRANTS defendant's motion.

## I. Background

Plaintiff Blue Nile, Inc. ("Blue Nile") is a Delaware corporation with its principal place of business in Washington. Compl. ¶ 8, docket no. 1. Mayfair does business solely in the State of New York. Kulchinsky Decl., ¶ 2, docket no. 26-2. Mayfair has never conducted business in Washington, has no employees or telephone numbers in Washington, and has made no sales in Washington. Id. However, Mayfair previously operated a website, www.mayfairdiamonds.com, that made Mayfair's products available for purchase over the internet. Compl. ¶¶ 16, 25, docket no. 1. Mayfair purchased the website from co-defendant Ideal Diamond Solutions, Inc. Id. at ¶ 61. The website displayed Blue Nile's copyrighted photographs and other works. Id. at ¶ 62.

## II. Discussion

Mayfair moves to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Blue Nile has the burden of establishing that the Court has personal jurisdiction over Mayfair. See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). In connection with a motion to dismiss under Rule 12(b)(2), "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." Id. "When a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Id. (citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)). In determining whether Blue Nile has made a prima facie case for personal jurisdiction, uncontroverted allegations in Blue Nile's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in Blue Nile's favor. See Doe, 248 F.3d at 922 (citing

Am. Tel. & Tel. Co. ("AT&T") v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996)).

Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994). First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Id. Second, the exercise of jurisdiction must comport with federal due process. Id. at 1404-05 (citing Shute v. Carnival Cruise Lines, 897 F.2d 377, 380 (9th Cir.1990), rev'd on other grounds, 499 U.S. 585 (1991)). Because Washington's long-arm statute, RCW 4.28.185,[2] extends jurisdiction to the limit of federal due process, the Court need analyze only the second part of the test. Id. at 1405 (citing Shute v. Carnival Cruise Lines, 113 Wn.2d 763 (1989); Shute, 897 F.2d at 380 n.2; Pac. Atlantic Trading Co. v. M/W Main Express, 758 F.2d 1325, 1327 (9th Cir. 1985)). Due process requires that a defendant have sufficient "minimum contacts" with the forum state. Int'l Shoe Corp. v. Washington, 326 U.S. 310, 316 (1945); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). The minimum contacts must be such that a defendant "should reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The minimum contacts analysis for personal jurisdiction requires a showing of either general or specific jurisdiction.[3] AT&T, 94 F.3d at 588. Blue Nile contends that Mayfair is subject to specific jurisdiction, which allows a court to adjudicate claims that arise out of a defendant's contacts with the forum. See id. (citations omitted). To be subject to specific jurisdiction:

---

[2] Washington's long-arm statute, in pertinent part, provides for personal jurisdiction over any person who transacts any business within the state or commits any tortious act within the state. RCW 4.28.185(1)(a)-(b).

[3] Mayfair argues that the Court does not have general jurisdiction. Mot. at 3, docket no. 26-1. Blue Nile filed no opposition on this issue, which the Court considers to be an admission that the argument has merit. Local Rule CR 7(b)(2).

1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws (the "Purposeful Availment Prong");

2) The claim must be one that arises out of or relates to the defendant's forum-related activities (the "Forum Related Activities Prong");

3) The exercise of jurisdiction must comport with fair play and substantial justice (the "Fair Play and Substantial Justice Prong").

Brainerd v. Governors of the Univ. of Alberta, 873 F.2d 1257, 1259 (9th Cir. 1989); see also Shute, 897 F.2d at 381 (substituting "reasonable" standard for "fair play and substantial justice").

### 1. Purposeful Availment Prong

Under the first prong of the three-part specific jurisdiction test, Blue Nile must establish that the defendants either purposefully directed their activities toward Washington or purposefully availed themselves of the privilege of conducting activities in Washington. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). Although courts often refer to both concepts as "purposeful availment," purposeful direction and purposeful availment are "distinct concepts." Id. "A purposeful availment analysis is most often used in suits sounding in contract," whereas "[a] purposeful direction analysis . . . is most often used in suits sounding in tort." Id.

Blue Nile has sued Mayfair in this action for copyright infringement, common law unfair competition, and civil conspiracy, claims which sound in tort. See, e.g., Brayton Purcell, LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010). Therefore, purposeful direction is the proper analytical framework.[4]  Id.

---

[4] Although the parties advocate for the application of the purposeful availment analysis, rather than the purposeful direction analysis, to do so in a case involving tort-based claims would be contrary to Supreme Court precedent. See Illinois v. Hemi Grp., L.L.C., 622 F.3d 754, 758-59 (7th Cir. 2010) (refusing to adopt the purposeful availment test in tort cases because "long before the Internet became a medium for

defamation the Supreme Court had decided the jurisdictional standard for intentional torts across state lines [(purposeful direction test)]."). Even if the Court were to apply the purposeful availment test, however, the result would be the same. "Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." Shute, 897 F.2d at 381. A defendant should not be "haled into court as the result of random, fortuitous or attenuated contacts, or on account of the unilateral activities of third parties." Id.; Brainerd, 873 F.2d at 1259. In addressing purposeful availment in the context of the internet, the Ninth Circuit distinguishes between passive websites and interactive websites. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997). A passive website does little more than make information available to those who are interested. See id. Conversely, interactive websites allow users to exchange information with the host computer, such as sites which allow customers to purchase products. Id. Blue Nile cites a string of cases that it contends stand for the proposition that an interactive website which offers products for sale to consumers in the forum is sufficient, standing alone, to establish personal jurisdiction over a non-resident defendant. In the Ninth Circuit and elsewhere, however, courts require something more than the mere operation of a website that is accessible by consumers in the forum district. See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997) ("Creating a [web]site, like placing a product into the stream of commerce, may be felt nationwide . . . but, without more, it is not an act purposefully directed towards the forum state."). Consequently, "[c]ourts have frequently declined to find purposeful availment in cases involving passive or moderately interactive Internet sites." Amazon.com, Inc. v. Kalaydjian, 2001 WL 491752 (W.D. Wash. 2001) (Rothstein, J.) (collecting cases). Indeed, even the cases cited by Blue Nile require "something more" than mere operation of a website to establish personal jurisdiction. In every case cited by Blue Nile, the defendant sold products to residents of the forum district in addition to operating an interactive website that offered products for sale in the forum district. Hemi, 622 F.3d 754 (300 sales to jurisdiction over a two-year period in addition to operation of website); Chloé v. Queen Bee of Beverly Hills, L.L.C., 616 F.3d 158 (2d Cir. 2010) (52 sales to jurisdiction in addition to operation of website); Jagex Ltd. v. Impulse Software, 2010 WL 3257919 (D. Mass. 2010) (several sales to jurisdiction in addition to operation of website); Read v. Lifeweaver, L.L.C., 2010 WL 1798704 (E.D. Tenn. 2010) (uncontradicted complaint alleged sales to jurisdiction in addition to operation of website); Willyoung v. Colorado Custom Hardware, Inc., 2009 WL 3183061 (W.D. Pa. 2009) (211 sales to jurisdiction over two-year period in addition to operation of website); Square D Co. v. Scott Elec. Co., 2008 WL 4462298 (W.D. Pa. 2008) (24 customers in jurisdiction in addition to operation of website); Food Scis. Corp. v. Nagler, 2010 WL 1186203 (D. N.J. 2010) (six sales to jurisdiction in addition to operation of website); 3M Co. v. Mohan, 2010 WL 786519 (D. Minn. 2010) (two percent of sales to residents in the jurisdiction in addition to operation of website). Blue Nile cites no authority for the proposition that the operation of an interactive website, without any allegation of actual sales or specific solicitation of residents in the forum, is sufficient to establish personal jurisdiction. Conversely, Mayfair cites authority that expressly provides that "the mere operation of a commercially interactive website should not subject the operator to jurisdiction anywhere in the world." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454 (3d Cir. 2003); see also Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir. 2002) (holding that the purposeful availment requirement is satisfied "if the web site is interactive to a degree that reveals specifically intended interaction with the residents of the forum state."). Here, Mayfair submitted evidence demonstrating that it has never sold any products to Washington residents, or done any business with anyone located in Washington, through its website or otherwise. Kulchinsky Decl., docket no. 26-2; 2d Kulchinsky Decl., docket no. 46-1.

ORDER PAGE -5

Purposeful direction is analyzed using the three-part Calder test.  Brayton Purcell, 606 F.3d at 1128 (citing Calder v. Jones, 465 U.S. 783 (1984)).  The Calder test requires a showing that the defendant (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state.  Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006).

        (a)       Intentional Act

Operating a website is an intentional act.  Rio Props., Inc. v. Rio Int'l Interlink, 384 F.3d 1007, 1020 (9th Cir. 2002).  Accordingly, there is no dispute that Mayfair has committed an intentional act.

        (b)       Express Aiming

The Ninth Circuit recently clarified the standard for express aiming in cases involving intellectual property infringement over the internet.  Brayton Purcell, 606 F.3d 1124.  In Brayton Purcell, the defendant was a private law firm practicing exclusively in southern California.  Id. at 1126.  The plaintiff was another law firm operating in the Northern District of California.  Id.  The defendant had a website that provided information to prospective clients, and listed telephone numbers for its offices located in southern California.  Id. at 1127.  The plaintiff also operated a website which marketed the plaintiff as a leader in elder abuse law.  Id. at 1126.  At some point, the defendant copied, verbatim, the portions of the plaintiff's website describing the plaintiff's expertise in elder law and posted the copied text on its own website.  Id. at 1127.  When the plaintiff discovered the plagiarism, it filed suit for copyright infringement in the Northern District of California.  Id.  The complaint alleged that the defendant knowingly and purposefully directed its infringing acts into the forum district for the purpose of promoting its business and competing in the forum with the plaintiff.  Id.  The defendant moved to dimiss for lack of personal

---

Accordingly, Blue Nile cannot meet its burden to show that the defendants have purposefully availed themselves of the privilege of doing business in Washington.

ORDER PAGE -6

jurisdiction. Id. Applying the purposeful direction analysis, the Ninth Circuit held that operators of interactive websites that infringe on a plaintiff's intellectual property rights for the purpose of directly competing with the plaintiff have expressly aimed their conduct at the forum where the plaintiff resides. Id. at 1130-31; see also Love v. Assc. Newspapers, Ltd., 611 F.3d 601, 609 n.4 (9th Cir. 2010) ("[T]he 'expressly aimed' prong of the purposeful direction test can be met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum.").

Here, Blue Nile alleges only that Mayfair operated a website that offers diamonds for sale in competition with Blue Nile. Compl. ¶¶ 16, 25, docket no. 1. Blue Nile does not allege that Mayfair knew that Blue Nile was located in Washington, or that it directed its activities to the forum in order to compete with Blue Nile for customers. See Brayton Purcell, 606 F.3d at 1135 ("Under the majority's opinion, every website operator faces the potential that he will be hailed into far-away courts based upon allegations of intellectual property infringement, if he happens to know where the alleged owner of the property rights resides and he is not barred from doing business there.") (emphasis added) (Reinhardt, J., dissenting). Accordingly, Blue Nile has failed to allege or submit facts that establish the express aiming prong of the purposeful direction test.

(c) Foreseeable Harm

To show foreseeable harm, Blue Nile must plead facts that establish that Mayfair's conduct caused harm that Mayfair knew was likely to be suffered in the forum. Brayton Purcell, 606 F.3d at 1131. In Brayton Purcell, the Ninth Circuit held that the defendant's conduct caused harm that was likely to be suffered in the forum because the defendant knew that the plaintiff resided in the forum. Id. at 1131. Conversely, here, Blue Nile has not alleged or submitted any evidence that suggests that Mayfair knew that

Blue Nile resides in the Western District of Washington. Accordingly, Blue Nile has not pleaded facts to establish the foreseeable harm element of the purposeful direction analysis.

### 2. Forum Related Activities Prong

In the absence of any forum-related activities by Mayfair, there can be no claim arising out of Mayfair's forum related activities. Here, Mayfair submits evidence that it has never made any sales to consumers in the State of Washington. Kulchinsky Decl., docket no. 26-2; 2d Kulchinsky Decl., docket no. 46-1. As Mayfair has had no forum-related activities, Blue Nile has failed to establish the second element necessary for personal jurisdiction.

### 3. Fair Play and Substantial Justice Prong

The Ninth Circuit has outlined seven factors to consider in determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, including (1) the extent of the purposeful interjection; (2) the burden on the defendant to defend in the chosen forum; (3) the extent of the conflict; (4) the forum state's interest in the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. CE Distrib., L.L.C. v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004). Mayfair argues that it would be burdensome to have to litigate in Washington, that it did nothing to purposefully interject itself into Washington, that Washington has no interest in resolution of the dispute, and that there exists an alternative forum (New York) where the case could be resolved. Reply, docket no. 46. Blue Nile does not discuss any of the relevant factors.

Blue Nile bears the burden of establishing that the Court has personal jurisdiction over Mayfair. Doe, 248 F.3d at 922. As Blue Nile has failed to dispute this element, the factors favor Mayfair's contention that the exercise of personal jurisdiction in this case would be unreasonable. Consequently,

Blue Nile has failed to meet its burden on any of the prongs of the specific jurisdiction analysis, and the Court therefore GRANTS Mayfair's motion to dismiss for lack of personal jurisdiction.[5]

However, Blue Nile requests leave to amend the complaint to allege that Mayfair knew or had reason to know that Blue Nile was principally located in the Western District of Washington. If the Court dismisses the complaint, or portions thereof, it must consider whether to grant leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). Accordingly, the Court GRANTS Blue Nile's motion to amend the complaint, and DIRECTS Blue Nile to file its amended complaint within thirty (30) days of this Order.

**Conclusion**

The Court GRANTS Mayfair's Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and DISMISSES Blue Nile's claims against Mayfair without prejudice. The Court further GRANTS Blue Nile's request for leave to amend the complaint.[6]

IT IS SO ORDERED.

DATED this 1st day of March, 2011.

Thomas S. Zilly
United States District Judge

---

[5] As Blue Nile has failed to establish personal jurisdiction over Mayfair, the Court declines to address Mayfair's alternative motions for improper venue or transfer of venue.

[6] Mayfair requests that the Court sanction Blue Nile for frivolously bringing its claim in this district without any basis to assert jurisdiction over Mayfair. Reply at 8-9, docket no. 46. The Court DECLINES to award sanctions.

ORDER PAGE -9